Good morning and welcome to the Ninth Circuit. It's fine to sit. Thank you. I'm Michelle Freedland, and Judge Bybee, Judge Miller, and I are very happy to be sitting in Alaska this week. Thank you all for coming this morning. We have several cases submitted on the briefs. United States v. Curiel 22-30189 is submitted. United States v. Long 23-30022 is submitted. United States v. Terry Lee Keene II 23-30031 is submitted. United States v. Williams 22-30155 is submitted. Crackert v. Watchtower Bible 23-35329 and 23-35330 are submitted. And we have one case on calendar, which is Grand River Enterprises v. Knudsen 23-35494. Each side will have 15 minutes. May I proceed, Your Honor? Yes, thank you. And may it please the Court, I'd like to reserve three minutes for rebuttal, if I'm permitted. The District Court erred in denying a preliminary injunction in this case. Grand River has a likelihood of success on its federal claims, and the remainder of the preliminary injunction factors tip in Grand River's favor. So I'd like to begin with federal preemption, Your Honor. Under 21 U.S.C. Section 337, the federal government is vested with exclusive authority to enforce the Food, Drug, and Cosmetic Act. This Court's cases have interpreted Section 337 to bar state law claims wherein a violation of the FDCA is a critical element. So most recently in this Court's decision in Nexus, the plaintiff asserted a claim saying that the defendant violated state law because the defendant was distributing a drug that wasn't FDA approved, and the Court held no. Even though that is nominally a state law claim, it still hinges on a federal violation and is therefore federally preempted. We think that this case falls within four corners of this Court's precedence in this area. What Montana said was that because Grand River had allegedly violated federal law, which of course we dispute, but because Grand River had allegedly violated federal law, therefore it would take this enforcement action against us, and that is a paradigmatic case of enforcement of the FDCA. What if the agreement had said if any of your products are deemed adulterated, then they may not be sold or distributed in Montana, they won't be listed? It would just depend then on the status of the product. So I still think that would probably be federally preempted because it would require it, although I think it's a more difficult case than this one, but my first-line answer is I still think it would be. So the legal standard in Nexus is that if a state law claim hinges on a purported violation of the FDCA that the FDA did not itself find, the claim is preempted. And it seems to me then you're hypothetical. They're just depending on a finding of the FDA. It's just the status of the drug. If the drug has been deemed, that's the statutory language, adulterated and misbranded, then you may not do X. And this would have been in the AVC, so this would have been a matter of contract law. So I still think that would be preempted, but then I want to distinguish your hypothetical. So my first-line answer, I'd point the Court towards the Perez case from 2013, where there was no doubt that the product was not FDA. So the holding there was that a fraud claim hinged on the failure to disclose the lack of FDA approval was preempted. So there was no doubt on the facts of that case that the product wasn't FDA approved. The record actually showed that the manufacturer received warning letters from the FDA. But nonetheless, the Court held that because a critical input into the state law claim was a lack of FDA approval, the federal government had exclusive enforcement authority. And I think that's the case in Your Honor's hypothetical as well, even though I understand it just depends on the status of adulterated and not the actual federal law violation. Still an input into that claim is the fact that it's deemed adulterated under federal law. I think a lot of the policy justifications for preemption still apply in that hypothetical too. One of the concerns in a case like Buckman is that you don't want parties, you know, submitting information to the FDA that it doesn't want, litigating cases to the bitter end. And I think that would still apply. But I just want to distinguish Your Honor's hypothetical, because even if Your Honor believes that that wouldn't be preempted, this case is different. It's quite explicit in the letter that Montana sent to Grand River that it actually found a violation of federal law. It says that quite clearly. You'll see that on the amended excerpt of the record, page 99. Like the Attorney General just goes right ahead and says you violated federal law, and therefore you violated the ABC. And again, I think that's just a paradigmatic case of the state enforcing federal law, even though the federal government has itself not done that. I'm sorry, did you have a question, Your Honor? I do actually have a question. So you did reference that you disagree with the idea that you were violating federal law, but I was having trouble figuring this out because it seems like the provisions that you're relying on for that have to do with products that were first introduced into the market between February 15, 2007, and March 22, 2011. And I couldn't find anything in the record that said whether your products were. They were, yes. So how can we find that? How do we know that that's true? I don't think that's disputed. I'm happy to submit a letter to the court with a particular place where that's in the record, but I don't think that's disputed in this case. We were waiting for almost a decade for the FDA to approve these. The substantial equivalence applications were just on ice for many, many years. And finally, we decided we weren't selling the product anymore, and we withdrew it. But I'm happy to send a letter to the court. But yeah, I don't think it's disputed that that's satisfied in this case. If it isn't, well, I guess I can ask the other side. Yeah, the fact that it was. The idea that you were selling these products that weren't really provisionally approved, and so how is that not disputed? Isn't that part of the violation? No, I don't think it's disputed that we submitted. I don't think it's disputed that we were selling these products before that 2011 date. As far as I know, that's never been disputed. And then we submitted these substantial equivalence applications. Now, it is, you know, the FDA didn't act on those. We just submitted them. So that part of the case, I think it's common ground. And then we were waiting and waiting and waiting. And then it's also common ground, I think, that while we were waiting and waiting and waiting, we were allowed to continue distributing and manufacturing the cigarettes. Or at least I don't construe Montana to have ever disputed that piece of it. The dispute arose when we withdrew those certifications. We voluntarily withdrew it. The reason why, basically, is we were waiting for years. We weren't even really selling these cigarettes anymore. The record shows we sold, like, 600 total cigarettes from all of these brands after we withdrew the certifications. And so, you know, when that happened, we didn't, after we did that, we didn't do any of the things that the statute forbids. We didn't manufacture. We didn't deliver. We received. All we did, the asserted violation, is simply keeping these brand families or the brand styles on the certification. So there's two brand families, Couture and Seneca. We kept them both on there. And we had withdrawn all of our Couture substantial equivalence applications. So that's the violation, merely putting it on that form. And the reason we did that is that the retailers and the wholesalers still had a very small amount left. We just wanted to make sure they could sell their inventory. But, like, the fact, I don't think that just putting it on the form violates any specific provision of the FDCA. And, in fact, I don't think the Attorney General has ever told us which of those we are alleged to have violated. So we strongly disagree that there's any federal violation here. But even if there is, our position is that the fact that the FDA hasn't ever reached that conclusion is sufficient. If you're not selling the cigarettes, you're not going to manufacture them any longer, you're not seeking approval from the FDA, why are we here? Well, we're here because we've been banned from selling all cigarettes in Montana, Your Honor. We've completely been wiped out of Montana. So what the Attorney General did is it said that we violated the ABC, and therefore we can't sell anything. Like, we're completely off the shelf. So it's like the corporate death penalty has been inflicted on Grand River. That's why we're here, Your Honor. We don't care about these eight brand styles. We stopped manufacturing them years ago. But we have other products that we sell that have been completely banned in the state. And is that, so this letter from the Attorney General was last June, I believe? Yes, Your Honor. And you didn't get a TRO or a PI. So you are presently not selling anything in Montana? Correct. We're just completely banned from all Montana shelves. That's right. Why did you bring two suits, one in state court and one in federal court, instead of making all of these claims in one place? Okay, I think we have a good reason for that. So we didn't bring the state law claim in federal court because there's a potential Pennhurst problem. We can't get injunctive relief under state law if we bring a state law claim in federal court. So we brought our state law claim in state court, but we brought our federal claim in federal court because we wanted a federal forum for our preemption claims and our due process claims. So that's basically the reason we did what we did. I don't think there's any rule against that. I think we're allowed to do that. I mean, they haven't raised claim preclusion, but I wondered why they didn't, because it seems like this could have been all brought in state court. Theoretically. So I don't think there's no final judgment in the state court. There's like a preliminary injunction denial, but the claim is still going. So you wouldn't even get the preclusion until there's a final judgment in any court. And we would still dispute there's claim preclusion even in that case, but here it's not even argued. I don't think there's even arguably claim preclusion when there's just an interlocutory order in the state court that's currently on appeal in the state Supreme Court. Anyway, that was not raised by Montana. It's not in their answer. It's not in the brief. And it's certainly a waivable argument, even if it had merit. We don't think it does. Can I turn to the due process claim? If you were to get a hearing, what would be at issue? Well, I think we'd say we never violated federal law, so we didn't do anything wrong. Of course, we think that our primary, our lead argument is federal preemption. They can't do this anyway, but if we're wrong on that, we would argue that we didn't do anything wrong by putting this on the certification. But we never got that hearing. We were just stripped right off the list. So the sequence of events was in 2022 we got this letter from the attorney general, and it did tell us that we shouldn't have included Couture and the Seneca styles on the certifications from 20 and 21. But from our perspective, we didn't care because we were happy to take it off. We had stopped selling these cigarettes in the state anyway. And the letter you'll see, it's on amended excerpts of record 80. So the letter references an existing administrative process for these 20 and 21 hearings, but we had taken it off in 2022. And so the letter says in the 2022 certification did not include the adulterated brand style, so we didn't really need a hearing for that. We were perfectly fine with that, right? Like we didn't care anymore. And then the attorney general accepted our 2022 certification, no problem from our perspective. So we kept selling in the state. And then in 23 we got this thunderbolt from the attorney general saying, hey, we've concluded you violated the ABC, so like you're banned forever apparently. And there was never a hearing for that. So we would like to have a hearing where we can raise our defense, which I think is a legitimate defense, which is we don't think we violated state law either. We don't think we did anything wrong here, and we certainly don't think we violated federal law. And that's the argument we would make, Your Honor. And why does due process require a pre-deprivation hearing? Why isn't it satisfied by the opportunity to challenge it after the fact in state court? Well, I mean, I think that here a pre-deprivation hearing is certainly practicable. I don't think the attorney general has argued that that's all the due process you get. I think the attorney general's argument is we've just wiped out all due process because of the ABC. I mean, we would say that we've been banned from the shelves for a year without any notice or opportunity for a hearing. I understand there are some cases in which a post-deprivation hearing is enough. But, you know, in this case, the state hasn't certainly argued that that is the appropriate doctrinal framework. And I just think the standard rule that you get notice in a hearing before the corporate death penalty is inflicted on you should be applied in this case. If we were to agree with you on the preemption theory, is there any reason for us to consider the due process? No, I don't think so. I think the court can disregard that and just go straight to the other plenary injunction factors. I'll just speak for a minute because my time is shortly expiring. The irreparable harm here is that we've been banned from selling our products and we can never get the money back. The state has a sovereign immunity. I mean, it's true that in cases with private parties, losing money might not be irreparable harm because you can get a money judgment at the end of the case. We can't do that here because of sovereign immunity, so we'll never get the money back. We also have a declaration in the record saying we're losing goodwill, which is kind of, I think, obvious when your products are banned from the shelves. People switch to other products. But just the most straightforward, ground-defined, irreparable harm is that we're just losing money every day, which we'll never get back. So I think the balance of equities favor us. I mean, these products have not been sold for years in the state. There's no risk to public safety. There's no allegation that our current products are a risk to public safety. They're all FDA approved, so I think the equities really tip in Grand River's favor in this case. Unless the panel has other questions, I'll reserve my time. Thank you. Thank you. And may it please the court. The district court's denial of GRE's request for a preliminary injunction should be upheld because GRE cannot meet the preliminary injunction factors. I think it's important to start with a history between GRE and the Montana Attorney General's Office. So from 2000 to 2002, GRE's tobacco products were sold in Montana. However, when GRE did not make the proper escrow payments, the state brought suit against GRE. In 2003, the AG received a default judgment, and GRE was enjoined from selling its products in Montana. Also in 2003, Montana codified the requirement that a tobacco product manufacturer and its products must be listed on the directory in order for its products to be sold, distributed, and marketed in Montana. It's a privilege, not a right, to be listed on the directory, as there are requirements and an analysis that has to be performed every year. In order to be listed on the directory, a company must submit an accurate certification. In its certification, the tobacco product manufacturer certifies, among other things, that all information included is accurate, that all products are intended for sale, and that it will immediately notify the AG of any changes in the status of its products. In 2012, GRE and the AG entered into the ABC. This allowed GRE to come into compliance with Montana law as well under strict circumstances. The ABC is a bargain for agreement that was negotiated between the parties with attorneys, without which GRE would not be selling its products in Montana. The ABC requires compliance with local, state, and federal laws and allows immediate removal from the directory. But it's that last part that is potentially a problem for you, because, I mean, reading the Attorney General's statement, the removal here was predicated on the Attorney General's determination that there had been a violation of federal law. And why is that not sort of squarely within what we said in Nexus Pharmaceuticals is the sort of claim where state law makes a violation of the FDCA a predicate that's preempted. GRE was not removed from the directory because it received a letter from the FDA. They were removed because they didn't inform the AG of the implications of that letter. As stated under the certification, they have to tell us immediately of any change in the status. That's not, I mean, that's not quite what the Attorney General said. The Attorney General said you marketed and promoted misbranded cigarettes in violation of federal law. So it seemed like he thought the problem was that they were violating the FDCA. Well, the AG certainly believes that the FDA letter was enforcement of the FDCA by the FDA. And it informed GRE in bold lettering not to continue selling. So the AG does believe that GRE violated that FDA letter by continuing to sell those products or at least offer them for sale by listing them on the directory. Is GR offering them for sale itself? My understanding was that these were others who had purchased their products and still had them on his inventory and that that is permitted under FDA rules. Correct, but listing them on the directory allowed GRE to sell them should they choose to do so. But what's the violation of federal law? What have they done that's violated federal law? Having a product that has the status of being adulterated and misbranded is not itself a violation of law. It's simply a categorization. If GRE were selling those products, that would be a violation of federal law that would be enforceable by the FDA. But they're not selling them themselves and the FDA does not require them to recall the products from others who have previously purchased them and are holding them as inventory. So where's the violation of federal law? The violation of federal law is listing on the directory. Wait, listing on what directory? On Montana's directory? And that violates federal law? What federal law is violated by having it listed on a Montana directory? It might be a violation of state law. That's not a violation of federal law. Well, the violation of federal law is in the FDA letter, which again is the FDA... The FDA hasn't said you violated federal law. They've said this is the status of your product. Correct. And at the bottom of the letter, it states that GRE must cease selling those products. But then it didn't sell those products. Correct, but it had the opportunity to do so for two years. Because it was listed on the directory, it could have sold it. GRE claims that it didn't have the market to do so or the market demand to do so, but that doesn't mean they couldn't have for two years. Do you have a particular provision of the federal code that you think that they're violating? My code is the FDA letter that tells them, which is again FDA letter's enforcement of the FDCA, saying stop selling. The FDA has to have some kind of statutory or regulatory authorization in order to find a violation. What's the FDA's authority for that? I believe it's listed in the bold lettering at the bottom of the FDA letter that says under this statute, stop selling. And do you have any evidence that GRE itself was selling these products in Montana? Other than... Products were being sold. That's a passive voice. That doesn't mean that GRE is selling them. We don't have evidence of GRE selling those products. That would be the violation of federal law. That would be a violation of federal law, wouldn't it? Correct. Absolutely. Enforceable by the FDA. Yes. Okay. And that would raise a different question of preemption. But you have no evidence that GRE is selling those products in Montana. So where's the violation of federal law? Again, I'll go back to the violation of federal law is their ability to sell them by listing them on the directory. But you don't have any evidence that GRE is actually selling them. They didn't actually sell them. Correct. So it's your view that federal law prohibits not just selling them but doing something that would make it possible for you to sell them, even if you don't actually sell them? Absolutely. Yes. And what provision of Title 21? Is there a regulation that tells us that or a case? What's the authority for that? The ability to sell them? The ability to sell, even if you're not actually selling, violates federal law. Well, included, again, at the bottom of that FDA letter, is selling but also marketing and promoting those cigarettes. Putting them on the directory is marketing and promoting them as sellable products. So even despite the fact that GRE didn't actually sell, they did actually market and promote those cigarettes and tobacco products by putting them on the directory. I mean, the directory is something filed with this? I mean, the state maintains this directory, right? Is there a website that you can go and see what's on there? Correct. There's a website that the state maintains that lists all tobacco product manufacturers and tobacco products that are available for sale in the state of Montana. Submitting something to a state governmental agency that maintains a list of people who have submitted things to the state doesn't fit very naturally within the ordinary meaning of marketing or promoting, does it? We believe it does because if it's not listed on that list, you can't market or promote it, and you're not offering it for sale. You're not saying that it can be sold in the state of Montana. Somebody can't go to the Montana – I assume you can't go to the Montana directory website and buy from the website, right? Correct. Okay. What if we went to the FDA and said, does this violate – do you think the GRE is violating federal law, and the FDA said no? Well, then the – Would Montana be bound by that? Would they be bound by that? Yes. If the FDA said we don't believe that GRE is violating the FDCA, I believe Montana would be bound by that. But we don't have anything, any evidence that suggests that the FDA thinks that they are violating it. Other than their instruction to stop sales, marketing, and promoting, no. Yeah, but that's not – that doesn't say we've found that you violated the law. Please stop. It doesn't say that they violated law past tense. It does inform them how they can violate the law in the future. Right, but that would have been in the statute. They could have read the statute for themselves and would have known that. They didn't need the FDA to tell them that. True. Going back to that, I think the question – the first question I asked, I mean, if we agreed with you that – if we agree with you that there is a violation of federal law here, how can the state create a – take enforcement action based on its determination that there's been a violation of federal law? Doesn't Nexus, among other cases, say that you can't do that? In addition to the federal law, Montana has strongly argued that GRE has also violated state law, which we can take action under, as well as the ABC, which again requires compliance with state and federal law. Okay, but I don't think that's quite an answer to the question. I mean, do you agree that you cannot take action based on a determination of a violation of federal law? I mean, maybe you can take action for some other reason, but can you take action against them based on your determination that they violated federal law? Well, I believe that the FDA is the one who told them that they would be violating federal law, so I don't think the AG made that determination. I think the FDA did. Well, the FDA never said listing this on a certification or in the directory is a violation of federal law. Correct. They did not specifically say listing it on the directory is a violation of federal law, but listing it on the directory is a violation of promoting and marketing the product, which is a violation of the federal law in the FDA letter. Well, it might or might not be, depending on what the FDA thought. If the FDA chose to weigh in, yes. But doesn't federal law give the FDA the discretion to be the one to decide whether that should be enforced or not? Well, I believe they had the discretion. That's why they sent the letter. But if they chose to take further enforcement action against GRE, yes, we would defer to whatever decision they made there. But why shouldn't we understand what happened here as you not deferring but taking more action than the FDA had taken, which federal law says states aren't supposed to do? Because the letter was enforcement action. Just because they didn't take further enforcement action doesn't mean that GRE wasn't on notice that it could violate the FDCA by doing the very specific thing that it did. In addition, I will state that GRE has not proven irreparable harm in this matter. The current federal district court case is scheduled for hearing on summary judgment on June 21st or June 17th. They are currently prohibited from selling the approved products, which means they're losing money and they can't ever get that money back from you, right? Correct. So why is that not irreparable harm? The irreparable harm is, well, number one, GRE hasn't come forth with any evidence other than its own statement that we're being harmed. Do you dispute that they are losing money every day, that they can't sell the approved products? Is there really any question about that? GRE is a nationwide company across the United States and Canada. It's making money off of the other states and countries as well as maintaining its goodwill in those other states. Any loss it may have in Montana is minimal compared to their overall market, as well as what Mr. Unikowski stated, that they don't have a large presence in Montana. They only sold 600 packs or 600 cartons, I believe, of those eight brand styles. So their market value that they're losing is minimal. There might be a small amount of irreparable harm, but it's still some. But we have an impending decision on the merits, either on summary judgment next month or a bench trial the month after that. So even if this court were to decide that GRE deserves a preliminary injunction, which we don't think they do, that preliminary injunction would only be there for weeks, if not days. I'm confused why the state is trying to do this. Why does the state care about these products that are approved? Like, why is the penalty here stop selling the products that are approved? Again, it goes back to the past and the history that the state has with GRE. We had a relationship with GRE from 2000 to 2002, and then GRE violated Montana statute, and they weren't allowed to sell anymore. So they're a second-chance company that we allowed to sell back in Montana again based on their agreeance to the AVC. Now they've violated Montana statute and potentially, or we believe, very possibly federal law. That's a lot for the AG to swallow when it comes to that relationship, which is why after all of these scenarios, after all of these incidences by GRE, we issued a notice of intent to remove. It seems like there was this changing of minds, though, because I don't understand why after 2022, it seemed like they could keep selling the products, but then after 2023, they couldn't. I mean, the AG had all the information it had for a while and let them keep selling the other products, and then all of a sudden, they couldn't. Is there an explanation for that change? Well, the AG was not informed of the FDA letter until 2022. Even after 2022, they were allowed to keep selling the approved products for a while, and then it's not until 2023 that all of a sudden they can't. What changed? What changed was the administrative hearing that is also involving GRE. They had certification denials that were denied that were working through the process. They had tried to come up with information regarding what had happened. There was a lot of analysis that had to occur before Montana could say, okay, you did actually violate all of these things. Does that answer your question? Not really, because I don't understand how the 2020 and 2021... I guess I understand, Jerry, to say that the 2020 and 2021 issues are not the same as these issues. Is that your understanding, too? Correct. They're additional issues, yes. But we don't really know what those are in our record here. Correct. They're not briefed, yes. But I guess what you're saying is you got so mad at them about those issues that that's the change in these issues? I think those issues... It was just a buildup of issues. And so the AG determined that the FDA was the cherry on top. That was the last straw for GRE violating Montana statute and the ABC. Why didn't you give them a hearing? Because under the ABC, they waived any due process hearing, and they have a right to come to court, as they have to adjudicate it if they believe it's inaccurate or improper. We've taken you over your time. Thank you for your argument. I think we have three minutes for rebuttal. Thank you. Thank you, Your Honor. Just a couple of small things. First of all, Your Honor is correct that the 2020 and 2021 hearings are on a totally unrelated issue. It's like the amount of the escrow payment and how we calculated that has nothing to do with this. So I just wanted to confirm that was correct. But is it those issues that tipped this over somehow? Like there's some interaction? I can't really read the AG's mind. All we know is we got this letter in 2022, which didn't say anything about banning us statewide. And then the AG accepted our certification in 22, and in the first part of 23, we were fine. And then we got this letter. So why the AG changed his mind, we don't know. It's not on the record, Your Honor. I just want also one other comment that my colleague made about the fact we only sold 600 cigarettes. It was actually only 600 of those now, of those brand styles that we withdrew. We sold more than that of the other non-withdrawn brand styles. So I just wanted to clarify that point. Do you have an approximate amount of money that's being lost? That's not on the record, Your Honor. In terms of the total amount we would hypothetically be selling? I don't think that's on the record, Your Honor. I'm sorry. And if I could just make one other point about the case schedule, because that was referenced by my colleague. It is the case that she's correct that there's a summary judgment hearing on June 17th. And we are a little concerned that the court will render a summary judgment ruling which would possibly moot this appeal. So then we have to wait another year and a half. So if the panel... We would appreciate, if possible, a ruling before that would happen. We would appreciate if the panel would be willing to consider doing that. You have a minute left. Can I just ask... I know historically there's been some tobacco production in southern Ontario. Does Grand River actually grow the tobacco on the reserve or are they purchasing it from somewhere else? I wish I could answer that, Your Honor. I don't know. I'm sorry. We don't have other questions, I don't think. Thank you both sides for the helpful arguments. This case is submitted and we're adjourned.
judges: BYBEE, FRIEDLAND, MILLER